IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JALEN L. WILLIAMS, | ) | CASE NO. 1:26-CV-02233 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| -v- | ) | **DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT** |
| | ) | |
| THE LINCOLN ELECTRIC COMPANY, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

For their Answer to Plaintiff Jalen L. Williams's ("Plaintiff") Complaint, Defendants The Lincoln Electric Company ("Lincoln Electric") and Chadric Clark ("Clark") (collectively, "Defendants") admit, deny and state as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Jalen L. Williams ("Williams") is a natural person residing in Cuyahoga County, Ohio. At all times relevant to the Complaint, Williams worked for Lincoln Electric as an Automated Optical Inspector ("AOI") from November 6, 2023, until his wrongful, unjustified, and discriminatory termination on December 9, 2025. Williams is a qualified individual with a disability under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111(8), and a qualified disabled person under R.C. 4112.01(A)(13) and Adm.Code 4112-5-02(K), as he suffers from a seizure disorder. Williams worked for Lincoln Electric in a full-time capacity and accumulated at least 1,250 hours of service during a 12-month period prior to using entitlements, making him an "eligible employee" under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2611(2)(A).

**ANSWER:** **Defendants admit that Lincoln Electric employed Plaintiff from November 6, 2023 to December 9, 2025. Defendants are without sufficient knowledge or information to form a belief as to the truth of Plaintiff's allegation that he resides in Cuyahoga County, Ohio, and therefore deny it. Defendants are unable to admit or deny whether Plaintiff worked 1,250 hours in a 12-month period because Plaintiff does not identify the specific 12-month period in question. The remaining allegations in paragraph 1 of the**

**Complaint state legal conclusions to which no response is required. To the extent this Court requires a response, Defendants admit that Lincoln Electric employed Plaintiff from November 6, 2023 to December 9, 2025. Defendants deny that they engaged in any acts or omissions that violate any federal, state, or local laws or regulations. Defendants deny the remaining allegations in paragraph 1 of the Complaint.**

2. Defendant The Lincoln Electric Company ("Lincoln Electric") is a domestic for-profit corporation duly incorporated under the laws of the State of Ohio, with its principal place of business situated in Cuyahoga County, Ohio. At all times relevant to the Complaint, Lincoln Electric employed Williams as an AOI from November 6, 2023, until his wrongful, unjustified, and discriminatory termination on December 9, 2025. Lincoln Electric is a covered entity and employer under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111(2) and (5), and an employer under R.C. 4112.01(A)(2). Lincoln Electric qualifies as an employer under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2611(4)(A)(i), because it both engages in commerce or in an industry affecting commerce, and employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

**<u>ANSWER:</u> Defendants admit that Lincoln Electric is a domestic for-profit corporation incorporated under the laws of the State of Ohio, and that its principal place of business is situated in Cuyahoga County, Ohio. Defendants admit that Lincoln Electric employed Plaintiff from November 6, 2023 to December 9, 2025. The remaining allegations in paragraph 2 of the Complaint state legal conclusions to which no response is required. To the extent this Court requires a response, Defendants admit that Lincoln Electric employed Plaintiff from November 6, 2023 to December 9, 2025. Defendants deny that they engaged in any acts or omissions that violate any federal, state, or local laws or regulations. Defendants deny the remaining allegations in paragraph 2 of the Complaint.**

3. Defendant Chadric Clark ("Clark") is a natural person residing in Cuyahoga County, Ohio. At all times relevant to the Complaint, Clark worked for Lincoln Electric as a Shift Supervisor and acted as Williams's supervisor from November 6, 2023, until Williams's wrongful, unjustified, and discriminatory termination on December 9, 2025. Clark knew or reasonably should have known that Williams was disabled. Clark qualifies as an employer under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2611(4)(A)(ii)(I), because he acted, directly or indirectly, in the interest of Lincoln Electric to any of Lincoln Electric's employees.

**ANSWER:** **Defendants admit that Clark is a natural person residing in Cuyahoga County, Ohio. Defendants admit that Clark is employed by Lincoln Electric and that Clark was Plaintiff's supervisor from November 2023 to December 9, 2025. The remaining allegations in paragraph 3 of the Complaint state legal conclusions to which no response is required. To the extent this Court requires a response, Defendants deny the remaining allegations in paragraph 3 of the Complaint, and deny that they engaged in any acts or omissions that violate any federal, state, or local laws or regulations.**

4. Jurisdiction is appropriate in the State of Ohio because all wrongful acts alleged herein were committed in Ohio.

**ANSWER:** **Paragraph 4 of the Complaint states legal conclusions to which no response is required. To the extent this Court requires a response, Defendants admit that this Court has jurisdiction over this matter based on the allegations in Plaintiff's Complaint, but Defendants deny that they engaged in any acts or omissions that violate any federal, state, or local laws or regulations. Defendants deny the remaining allegations in paragraph 4 of the Complaint.**

5. Venue is proper in Cuyahoga County because Lincoln Electric in incorporated in Cuyahoga County, its principal place of business is in Cuyahoga County, and the wrongful acts alleged herein were committed in Cuyahoga County.

**ANSWER:** **Paragraph 5 of the Complaint states legal conclusions to which no response is required. To the extent this Court requires a response, Defendants admit that venue is proper in this Court based on the allegations in Plaintiff's Complaint, but Defendants deny that they engaged in any acts or omissions that violate any federal, state, or local laws or regulations. Defendants deny the remaining allegations in paragraph 5 of the Complaint.**

## STATEMENT OF FACTS

6. Williams began working for Lincoln Electric as an AOI on November 6, 2023, and Lincoln Electric reasonably knew or should have known at that time that Williams had a disability, i.e., a seizure disorder.

**ANSWER: Defendants admit that Lincoln Electric employed Plaintiff from November 6, 2023 to December 9, 2025. Defendants deny the remaining allegations in paragraph 6 of the Complaint.**

7. In this role of AOI, Williams was tasked with operating an automated optical inspection system ("AOIS") and performing a manual visual inspection on the printed circuit boards ("PCB") which ran through the AOIS.

**ANSWER: Defendants admit that Plaintiff's job duties included operating an automated optical inspection system ("AOIS") and performing a manual visual inspection on the printed circuit boards ("PCB") that ran through the AOIS. Defendants deny the remaining allegations in paragraph 7 of the Complaint.**

8. The PCBs would first travel through the AOIS, a sophisticated machine comprised of high-resolution cameras, specialized lighting elements, x-ray equipment, and advanced software algorithms, which electronically inspected the PCBs for manufacturing defects, such as missing components or bad solder joints.

**ANSWER: Defendants admit the allegations in paragraph 8 of the Complaint.**

9. The AOIS would either pass or fail the PCB based on its inspection.

**ANSWER: Defendants admit the allegations in paragraph 9 of the Complaint.**

10. Williams's role was to then perform a manual visual inspection of the PCBs to confirm the result obtained by the AOIS.

**ANSWER: Defendants admit that Plaintiff's job duties included performing a manual visual inspection of PCBs. Defendants deny the remaining allegations in paragraph 10 of the Complaint.**

11. If a PCB passed both the AOIS inspection and Williams's inspection, Williams marked the board as approved and sent it along to be included in other equipment and products manufactured by Lincoln Electric.

**<u>ANSWER:</u> Defendants admit that, if a PCB passed the AOIS inspection and manual visual inspection, the process required the inspector to then mark the PCB as approved. Defendants deny the remaining allegations in paragraph 11 of the Complaint.**

12. If a PCB failed either the AOIS inspection or Williams's inspection, Williams removed the PCB from the production line and set it aside.

**<u>ANSWER:</u> Defendants admit that the applicable procedure required the inspector to remove a PCB that failed inspection from the production line and set it aside. Defendants deny the remaining allegations in paragraph 12 of the Complaint.**

13. Notably, Williams did not insert PCBs into the AOIS for inspection; he only worked with the output side of the AOIS.

**<u>ANSWER:</u> Defendants deny the allegations in paragraph 13 of the Complaint.**

14. Throughout his employment, Williams regularly complained to his supervisors that the AOIS was not correctly identifying errors in PCBs, and was approving PCBs that should have been rejected.

**<u>ANSWER:</u> Defendants deny the allegations in paragraph 14 of the Complaint.**

15. Despite his repeated complaints and requests for support and assistance, Lincoln Electric unreasonably failed to repair the AOIS or provide Williams with his requested accommodations.

**<u>ANSWER:</u> Defendants deny the allegations in paragraph 15 of the Complaint.**

16. Several months into his employment with Lincoln Electric, in Spring 2024, Williams experienced several debilitating seizures that caused him to miss work.

**<u>ANSWER:</u> Defendants admit that, in Spring 2024, Plaintiff took time off from work for a reported medical issue. Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegation in paragraph 16 of the Complaint, and therefore deny them.**

17. Williams applied for leave under Lincoln Electric's FMLA program to cover any planned (e.g. medical appointment) or unplanned absences related to his seizure disorder, but was denied eligibility at that time; accordingly, Williams had to use his accrued paid time off for the absences caused by his seizure disorder in 2024.

**ANSWER:** **Defendants admit that, in Spring 2024, Plaintiff applied for FMLA leave. Defendants admit that Plaintiff was not eligible for FMLA leave in Spring 2024. Defendants admit that Plaintiff used paid time off at times during Spring 2024. Defendants deny the remainingdeny the remaining allegations in paragraph 17 of the Complaint.**

18. Williams thereafter worked without incident, whether medical or disciplinary, until about one year later in March 2025, when Williams again experienced several seizures which necessitated him to miss work for around two months to recover.

**ANSWER:** **Defendants admit that, beginning in March 2025, Plaintiff took a continuous leave of absence under the FMLA for his own medical condition. Defendants deny the remaining allegations in paragraph 18 of the Complaint.**

19. Williams applied for FMLA leave to cover his two-month absence, and this time Lincoln Electric approved the request; Williams returned to work in May 2025.

**ANSWER:** **Defendants admit that Plaintiff applied for FMLA leave and that his application was approved from March 3, 2025 through April 14, 2025. Defendants deny the remaining allegations in paragraph 19 of the Complaint.**

20. As part of his FMLA coverage, Williams was permitted to use up to two days of intermittent FMLA leave each week in case of another seizure episode, though he had to recertify his need for intermittent leave every six months.

**ANSWER:** **Defendants admit that Plaintiff applied and was approved for intermittent FMLA leave from April 2, 2025 through September 2, 2025. Defendants admit that Lincoln Electric requested that Plaintiff recertify his need for intermittent leave every six months, as permitted under the FMLA. Defendants deny the remaining allegations in paragraph 20 of the Complaint.**

21. It was after his return from FMLA leave, and the start of his use of intermittent leave, that Williams began to experience heightened and discriminatory scrutiny from Clark and others at Lincoln Electric because of his well-documented disability and his use of intermittent FMLA leave.

**ANSWER:** **Defendants deny the allegations in paragraph 21 of the Complaint.**

22. Throughout Williams's employment, Lincoln Electric maintained a written employee handbook which contained a progressive discipline policy; Williams was subject to the terms of the handbook and the progressive discipline policy.

**ANSWER: Defendants admit the allegations in paragraph 22 of the Complaint.**

23. Under the discipline policy, an employee's first violation resulted in a behavioral observation, the lowest step, with subsequent infractions resulting in a written warning for a second violation, a final written warning for a third violation, and involuntary termination for a fourth violation.

**ANSWER: Defendants state that Lincoln Electric's progressive discipline policy speaks for itself. Defendants deny Plaintiff's characterization of Lincoln Electric's progressive discipline policy. Defendants deny the remaining allegations in paragraph 23 of the Complaint.**

24. Lincoln Electric's discipline policy also separated infractions into three groups, with Group A infractions being more minor and handled with progressive discipline, and Group C infractions being serious violations which could result in immediate termination for a first offense.

**ANSWER: Defendants state that Lincoln Electric's progressive discipline policy speaks for itself. Defendants deny Plaintiff's characterization of Lincoln Electric's progressive discipline policy. Defendants deny the remaining allegations in paragraph 24 of the Complaint.**

25. On September 4, 2025, after just a few months back to work, and despite his numerous prior complaints regarding the AOIS not functioning properly, Williams was issued a Group A behavioral observation by Clark for passing as approved several PCBs which had not been approved by the AOIS.

**ANSWER: Defendants admit that Clark issued Plaintiff a behavioral observation. Defendants state that the behavioral observation speaks for itself. Defendants deny the remaining allegations in paragraph 25 of the Complaint.**

26. On October 22, 2025, Williams electronically received a letter from Sedgwick, the company managing Lincoln Electric's employee benefits programs, approving Williams's use of intermittent FMLA leave for the six-month period beginning on September 30, 2026 [sic], and ending on March 30, 2026.

**ANSWER:** **Defendants admit that, on or about October 22, 2025, Sedgwick sent Plaintiff a letter notifying him that his request for intermittent FMLA leave from September 30, 2025 through March 30, 2026 was approved. Defendants state that the letter speaks for itself. Defendants deny the remaining allegations in paragraph 26 of the Complaint.**

27. Lincoln Electric was copied on this correspondence and is presumed to have received it contemporaneously with Williams.

**ANSWER:** **Defendants admit that certain Lincoln Electric personnel received a copy of the October 22, 2025 letter that Sedgwick sent Plaintiff. Defendants state that the letter speaks for itself. Defendants deny the remaining allegations in paragraph 27 of the Complaint.**

28. Around the time of this letter from Sedgwick, Clark confronted Williams regarding certain attendance issues from June and October 2025 and threatened Williams with discipline.

**ANSWER:** **Defendants deny the allegations in paragraph 28 of the Complaint.**

29. Williams was able to demonstrate that these absences were covered under his approved intermittent FMLA leave, and further that Sedgwick had confirmed his use of intermittent FMLA leave on the dates in question.

**ANSWER:** **Defendants deny the allegations in paragraph 29 of the Complaint.**

30. On October 23, 2025, and in retaliation for having proved his absences were valid and approved uses of intermittent FMLA leave, Williams was issued a written warning for these attendance issues by a different supervisor, Kevin Johnson ("Johnson"), which applied retroactively to these alleged attendance issues in June 2025 stemming from Williams's use of intermittent FMLA leave, along with other covered events in October 2025.

**ANSWER:** **Defendants admit that Kevin Johnson issued Plaintiff a written warning for attendance issues on or about October 23, 2025. Defendants state that the written warning speaks for itself. Defendants deny that any of the attendance issues included in the written warning were covered by Plaintiff's use of intermittent FMLA leave. Defendants deny the remaining allegations in paragraph 30 of the Complaint.**

31. Even though Williams was permitted to use intermittent FMLA leave during these times, Johnson wrote in this written warning that Williams's failure "to report for work" required "immediate attention," and that "[f]ailure to correct this problem and improve [his] overall performance will result in further disciplinary action up to and including termination."

**<u>ANSWER:</u> Defendants state that the written warning speaks for itself. Defendants deny Plaintiff's characterization of the written warning, and deny that any of the attendance issues included in the written warning were covered by Plaintiff's use of intermittent FMLA leave. Defendants deny the remaining allegations in paragraph 31 of the Complaint.**

32. On December 4, 2025, a member of Lincoln Electric's Quality Assurance team brought to Clark's attention that Williams had passed as approved several PCBs which had not been approved by the AOIS-even though Williams had previously complained about the AOIS not functioning properly, and Lincoln Electric unreasonably failed to address Williams's concerns.

**<u>ANSWER:</u> Defendants admit that a member of Lincoln Electric's Quality Assurance Department discovered that, on December 4, 2025, Plaintiff stamped PCBs as having been inspected and sent them to the next operation without actually running the PCBs through the AOIS. Defendants deny the remaining allegations in paragraph 32 of the Complaint.**

33. On December 9, 2025, Clark issued a termination notice to Williams for falsifying company records, a Group C offense, which resulted in Williams's immediate termination-even though this incident was the same as what occurred on September 4, 2025.

**<u>ANSWER:</u> Defendants admit that, on December 9, 2025, Lincoln Electric terminated Plaintiff's employment for falsification of company documents, which is a Group C offense under Lincoln Electric's progressive discipline policy. Defendants deny the remaining allegations in paragraph 33 of the Complaint.**

34. Clark wrote in this termination notice that Williams falsified company records "by stamping G9450-1 boards as inspected and sending them to the next operation without running them through the Automated Optical Inspection (AOI) machine on 12-4-2025."

**<u>ANSWER:</u> Defendants state that the termination notice speaks for itself. Defendants deny the remaining allegations in paragraph 34 of the Complaint.**

35. After his involuntary termination, Williams applied for and received unemployment benefits through the Ohio Department of Jobs and Family Services, which began on December 21, 2025; however, on March 4, 2026, the Director issued a Redetermination which held that Williams had been terminated by Lincoln Electric for just cause in connection with work.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegation in paragraph 35 of the Complaint, and therefore deny them.**

36. Williams filed an appeal from the Redetermination on March 18, 2026, and a hearing was held over the phone on April 2, 2026; Williams appeared and provided testimony, and Clark appeared for Lincoln Electric.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth of Plaintiff's allegation that he filed an appeal from the Redetermination on March 18, 2026, and therefore deny it. Defendants admit that Plaintiff and Clark provided testimony at a telephonic unemployment hearing on or about April 2, 2026. Defendants deny the remaining allegations in paragraph 36 of the Complaint.**

37. On April 3, 2026, the Unemployment Compensation Review Commission reversed the Redetermination and reinstated unemployment benefits, finding that Williams was discharged by Lincoln Electric without just cause in connection with work.

**ANSWER: Defendants state that the Unemployment Compensation Review Commission's decision speaks for itself. Defendants deny the remaining allegations in paragraph 37 of the Complaint.**

38. In reversing the prior decision, the Review Commission found that Williams could not have intentionally falsified company records, as the termination notice alleged, because Williams was not responsible for sending PCBs through the AOIS; Williams only handled sorting the output of the AOIS.

**ANSWER: Defendants state that the Unemployment Compensation Review Commission's decision speaks for itself. Defendants deny Plaintiff's characterization of the decision. Defendants deny the remaining allegations in paragraph 38 of the Complaint.**

39. Additionally, the Review Commission found that Lincoln Electric failed to follow its own written progressive discipline policy, stating that Williams was discharged after only receiving a behavioral observation, the lowest step of Lincoln Electric's progressive discipline policy.

**<u>ANSWER:</u> Defendants state that the Unemployment Compensation Review Commission's decision speaks for itself. Defendants deny Plaintiff's characterization of the decision. Defendants deny the remaining allegations in paragraph 39 of the Complaint.**

40. Williams timely filed a charge of discrimination with the EEOC, which was dual filed with the OCRC, and received a notice of suit rights on May 13, 2026.

**<u>ANSWER:</u> Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegation in paragraph 40 of the Complaint, and therefore deny them.**

**<u>COUNTS ONE AND TWO: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12112(a), AND THE OHIO CIVIL RIGHTS ACT, R.C. 4112.02(A): DISABILITY DISCRIMINATION-WRONGFUL TERMINATION AGAINST DEFENDANT LINCOLN ELECTRIC</u>**

41. Williams realleges and reaffirms Paragraphs 1 through 40 as if fully restated herein.

**<u>ANSWER:</u> Defendants incorporate their responses to paragraphs 1 through 40 above as if fully rewritten herein.**

42. The Americans with Disabilities Act of 1990, 42 U.S.C. § 12112(a), states that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to * * * discharge of employees * * * , and other terms, conditions, and privileges of employment."

**<u>ANSWER:</u> Defendants state that the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112(a), speaks for itself. Defendants deny the remaining allegations in paragraph 42 of the Complaint.**

43. Williams is a "qualified individual" under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111(8), because he could, "with or without reasonable accommodation * * * , perform the essential functions of the employment position that such individual holds or desires."

<u>**ANSWER:**</u> **Paragraph 43 of the Complaint states legal conclusions to which no response is required. To the extent this Court requires a response, Defendants deny the allegations in paragraph 43 of the Complaint.**

44. Section 4112.02(A) of the Ohio Revised Code makes it an "unlawful discriminatory practice" for "any employer, because of * * * disability * * * , to discharge without just cause * * * , or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

<u>**ANSWER:**</u> **Defendants state that Section 4112.02(A) of the Ohio Revised Code speaks for itself. Defendants deny the remaining allegations in paragraph 44 of the Complaint.**

45. Williams is classified as having a "disability" under Section 4112.01(A)(13) of the Ohio Revised Code, because he has "a physical or mental impairment that substantially limits one or more major life activities," "a record of a physical or mental impairment," or was "regarded as having a physical or mental impairment" by Lincoln Electric.

<u>**ANSWER:**</u> **Paragraph 45 of the Complaint states legal conclusions to which no response is required. To the extent this Court requires a response, Defendants deny the allegations in paragraph 45 of the Complaint.**

46. Lincoln Electric reasonably knew or should have known that Williams had a qualifying disability under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111(8), and under Section 4112.01(A)(13) of the Ohio Revised Code.

<u>**ANSWER:**</u> **Paragraph 46 of the Complaint states legal conclusions to which no response is required. To the extent this Court requires a response, Defendants deny the allegations in paragraph 46 of the Complaint.**

47. Williams was qualified for his position, having met Lincoln Electric's relevant standards for skill, experience, education, and other job-related requirements for the AOI role.

<u>**ANSWER:**</u> **Defendants deny the allegations in paragraph 47 of the Complaint.**

48. Williams was further qualified for his position as he could perform the essential functions of the AOI position with or without the need for a reasonable accommodation.

<u>**ANSWER:**</u> **Defendants deny the allegations in paragraph 48 of the Complaint.**

49. Williams repeatedly requested additional support and assistance with the malfunctioning OIS, but Lincoln Electric unreasonably failed to accommodate Williams's requests for support and assistance.

**ANSWER:** **Defendants deny the allegations in paragraph 49 of the Complaint.**

50. Lincoln Electric failed to follow its written progressive discipline system and involuntarily terminated Williams without just cause.

**ANSWER:** **Defendants deny the allegations in paragraph 50 of the Complaint.**

51. Lincoln Electric used the alleged falsification of business records as pretext to discriminate against Williams and terminate his employment because of his disability.

**ANSWER:** **Defendants deny the allegations in paragraph 51 of the Complaint.**

52. By not following its written progressive discipline and terminating Williams without just cause, Lincoln Electric discriminated against Williams by treating him differently than similarly situated non-disabled employees and treating him differently because of his disability.

**ANSWER:** **Defendants deny the allegations in paragraph 52 of the Complaint.**

53. Lincoln Electric cannot articulate a legitimate, nondiscriminatory motive for its failure to accommodate Williams's requests for additional support and assistance.

**ANSWER:** **Defendants deny the allegations in paragraph 53 of the Complaint.**

54. Lincoln Electric cannot articulate a legitimate, nondiscriminatory motive for its failure to follow the multi-step progressive discipline process outlined in its employee handbook.

**ANSWER:** **Defendants deny the allegations in paragraph 54 of the Complaint.**

55. Lincoln Electric cannot articulate a legitimate, nondiscriminatory motive for its decision to involuntarily terminate Williams's employment without just cause.

**ANSWER:** **Defendants deny the allegations in paragraph 55 of the Complaint.**

56. As a direct and proximate result of Lincoln Electric's unlawful and discriminatory conduct, Williams suffered losses to the terms, conditions, and privileges of his employment with Lincoln Electric, which included continued employment, promotions, raises in salary, and other related employee benefits.

**ANSWER:** **Defendants deny the allegations in paragraph 56 of the Complaint.**

57. As a direct and proximate result of Lincoln Electric's unlawful and discriminatory conduct, Williams suffered serious, genuine, and consequential damages, including pain, suffering, emotional distress, mental distress, and loss of quality and enjoyment of life.

**ANSWER:** **Defendants deny the allegations in paragraph 57 of the Complaint.**

58. Lincoln Electric's unlawful and discriminatory conduct was intentional, willful, wanton, malicious, reckless, and in conscious disregard to Williams's rights and feelings, and to the terms, conditions, and privileges of Williams's employment.

**ANSWER:** **Defendants deny the allegations in paragraph 58 of the Complaint.**

## COUNTS THREE AND FOUR: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12203(a), AND THE OHIO CIVIL RIGHTS ACT, R.C. 4112.02(I): DISABILITY DISCRIMINATION-RETALIATION AGAINST DEFENDANT LINCOLN ELECTRIC

59. Williams realleges and reaffirms Paragraphs 1 through 40 as if fully restated herein.

**ANSWER:** **Defendants incorporate their responses to paragraphs 1 through 58 above as if fully rewritten herein.**

60. The Americans with Disabilities Act of 1990, 42 U.S.C. § 12203(a), states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter[.]"

**ANSWER:** **Defendants state that the ADA speaks for itself. Defendants deny the remaining allegations in paragraph 60 of the Complaint.**

61. Section 4112.02(I) of the Ohio Revised Code makes it an "unlawful discriminatory practice" for an employer "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section[.]"

**ANSWER:** **Defendants state that Section 4112.02(I) of the Ohio Revised Code speaks for itself. Defendants deny the remaining allegations in paragraph 61 of the Complaint.**

62. Williams, as a person with a disability, is a member of a protected class.

**ANSWER:** **Paragraph 62 of the Complaint states legal conclusions to which no response is required. To the extent this Court requires a response, Defendants deny the allegations in paragraph 62 of the Complaint.**

63. Williams engaged in protected activity by seeking out and obtaining employment benefits from Lincoln Electric concerning his disability.

**ANSWER:** **Paragraph 63 of the Complaint states legal conclusions to which no response is required. To the extent this Court requires a response, Defendants deny the allegations in paragraph 63 of the Complaint.**

64. Clark, as an agent of Lincoln Electric and acting as Williams's direct supervisor, engaged in unlawful discriminatory practices by: (i) issuing a behavioral observation on September 4, 2025; (ii) threatening to impose punishment on Williams for approved absences related to his disability; and (iii) issuing an involuntary termination notice on December 9, 2026.

**ANSWER:** **Paragraph 64 of the Complaint states legal conclusions to which no response is required. To the extent this Court requires a response, Defendants deny the allegations in paragraph 64 of the Complaint.**

65. Williams opposed an unlawful discriminatory practice by presenting evidence to Clark that his alleged attendance issues in June and October 2025 were approved and covered instances of medical leave for his disability.

**ANSWER:** **Paragraph 65 of the Complaint states legal conclusions to which no response is required. To the extent this Court requires a response, Defendants deny the allegations in paragraph 65 of the Complaint.**

66. The imposition of punishment constitutes an adverse employment action which materially impacted the terms, privileges, and privileges of Williams's employment with Lincoln Electric.

**ANSWER:** **Paragraph 66 of the Complaint states legal conclusions to which no response is required. To the extent this Court requires a response, Defendants deny the allegations in paragraph 66 of the Complaint.**

67. The imposition of involuntary termination constitutes an adverse employment action which materially impacted the terms, privileges, and privileges of Williams's employment with Lincoln Electric.

**ANSWER:** **Paragraph 67 of the Complaint states legal conclusions to which no response is required. To the extent this Court requires a response, Defendants deny the allegations in paragraph 67 of the Complaint.**

68. There is a strong causal and temporal connection between Williams's protected activity and the adverse employment actions he experienced.

**ANSWER:** **Defendants deny the allegations in paragraph 68 of the Complaint.**

69. As a direct and proximate result of Lincoln Electric's unlawful and discriminatory conduct, as conducted through its agent, Clark, Williams suffered losses to the terms, conditions, and privileges of his employment with Lincoln Electric, which included continued employment, promotions, raises in salary, and other related employee benefits.

**ANSWER:** **Defendants deny the allegations in paragraph 69 of the Complaint.**

70. As a direct and proximate result of Lincoln Electric's unlawful and discriminatory conduct, as conducted through its agent, Clark, Williams suffered serious, genuine, and consequential damages, including pain, suffering, emotional distress, mental distress, and loss of quality and enjoyment of life.

**ANSWER:** **Defendants deny the allegations in paragraph 70 of the Complaint.**

71. Lincoln Electric's unlawful and discriminatory conduct, as conducted through its agent, Clark, was intentional, willful, wanton, malicious, reckless, and in conscious disregard to Williams's rights and feelings, and to the terms, conditions, and privileges of Williams's employment.

**ANSWER:** **Defendants deny the allegations in paragraph 71 of the Complaint.**

## COUNT FIVE: VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT OF 1993, 29 U.S.C. § 2615(A)(3): RETALIATION AGAINST DEFENDANTS LINCOLN ELECTRIC AND CLARK

72. Williams realleges and reaffirms Paragraphs 1 through 40 as if fully restated herein.

**ANSWER:** **Defendants incorporate their responses to paragraphs 1 through 71 above as if fully rewritten herein.**

73. Williams, as a person with a disability, is a member of a protected class.

**ANSWER:** **Paragraph 73 of the Complaint states legal conclusions to which no response is required. To the extent this Court requires a response, Defendants deny the allegations in paragraph 73 of the Complaint.**

74. Williams worked for Lincoln Electric in a full-time capacity and accumulated at least 1,250 hours of service during a 12-month period prior to using FMLA entitlements, making him an "eligible employee" under 29 U.S.C. § 2611(2)(A).

**<u>ANSWER:</u> Paragraph 74 of the Complaint states legal conclusions to which no response is required. Defendants are unable to admit or deny whether Plaintiff worked 1,250 hours in a 12-month period because Plaintiff does not identify the specific 12-month period in question. To the extent this Court requires a response, Defendants admit that, at the time it approved Plaintiff's requests for FMLA leave, he was an eligible employee as defined by the FMLA. Defendants deny the remaining allegations in paragraph 74 of the Complaint.**

75. Williams engaged in protected activity by providing Lincoln Electric and Clark with adequate, reasonable, and practicable notice of his intent to utilize an entitlement authorized under FMLA, which included completing Lincoln Electric's forms to apply for FMLA leave and submitting necessary medical certifications to substantiate his qualifying serious health condition under 29 U.S.C. § 2611(11)(A).

**<u>ANSWER:</u> Paragraph 75 of the Complaint states legal conclusions to which no response is required. To the extent this Court requires a response, Defendants deny the allegations in paragraph 75 of the Complaint.**

76. Williams engaged in protected activity by making use of an entitlement authorized under FMLA when he took leave from work because of his seizure disorder.

**<u>ANSWER:</u> Paragraph 76 of the Complaint states legal conclusions to which no response is required. To the extent this Court requires a response, Defendants deny the allegations in paragraph 76 of the Complaint.**

77. Lincoln Electric and Clark knew that Williams intended to and then did make use of his entitlements authorized under FMLA regarding his seizure disorder.

**<u>ANSWER:</u> Defendants admit that they were aware that Plaintiff was approved for leave under the FMLA and that Plaintiff used approved FMLA leave during his employment. Defendants deny the remaining allegations in paragraph 77 of the Complaint.**

78. Lincoln Electric and Clark's decision to issue discipline against Williams, and to ultimately terminate Williams's employment, for his use of protected entitlements was retaliatory, unreasonable, made without good faith, and done in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615(a)(2).

**ANSWER:** **Paragraph 78 of the Complaint states legal conclusions to which no response is required. To the extent this Court requires a response, Defendants deny the allegations in paragraph 78 of the Complaint.**

79. There is strong causal and temporal causation between Williams's use of his protected entitlements and Lincoln Electric and Clark's decision to issue discipline against Williams, and to ultimately terminate Williams's employment, for his use of protected entitlements.

**ANSWER:** **Defendants deny the allegations in paragraph 79 of the Complaint.**

80. As a direct and proximate result of Lincoln Electric and Clark's unlawful and discriminatory conduct, Williams suffered losses to the terms, conditions, and privileges of his employment with Lincoln Electric, which included continued employment, promotions, raises in salary, and other related employee benefits.

**ANSWER:** **Defendants deny the allegations in paragraph 80 of the Complaint.**

81. As a direct and proximate result of Lincoln Electric and Clark's unlawful and discriminatory conduct, Williams suffered serious, genuine, and consequential damages, including pain, suffering, emotional distress, mental distress, and loss of quality and enjoyment of life.

**ANSWER:** **Defendants deny the allegations in paragraph 81 of the Complaint.**

82. Lincoln Electric and Clark's unlawful and discriminatory conduct was intentional, willful, wanton, malicious, reckless, and in conscious disregard to Williams's rights and feelings, and to the terms, conditions, and privileges of Williams's employment.

**ANSWER:** **Defendants deny the allegations in paragraph 82 of the Complaint.**

**COUNT SIX: VIOLATION OF THE OHIO CIVIL RIGHTS ACT, R.C. 4112.02(jj) DISABILITY DISCRIMINATION-AIDING AND ABETTING AGAINST DEFENDANT CHADRIC CLARK**

83. Williams realleges and reaffirms Paragraphs 1 through 40 as if fully restated herein.

**ANSWER:** **Defendants incorporate their responses to paragraphs 1 through 82 above as if fully rewritten herein.**

84. Williams, as a qualified disabled person, is a member of a protected class.

**<u>ANSWER:</u> Paragraph 84 of the Complaint states legal conclusions to which no response is required. To the extent this Court requires a response, Defendants deny the allegations in paragraph 84 of the Complaint.**

85. Section 4112.02(J) of the Ohio Revised Code makes it an "unlawful discriminatory practice" for "any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice * * * , or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice."

**<u>ANSWER:</u> Defendants state that Section 4112.02(J) of the Ohio Revised Code speaks for itself. Defendants deny the remaining allegations in paragraph 85 of the Complaint.**

86. Clark, as an agent of Lincoln Electric and acting as Williams's direct supervisor, intentionally, purposefully, knowingly, and willfully aided and assisted Lincoln Electric in committing and perpetuating unlawful disability discrimination against Williams, as described more fully in Paragraphs 25 through 39.

**<u>ANSWER:</u> Defendants deny the allegations in paragraph 86 of the Complaint.**

87. Clark intentionally, purposefully, knowingly, and willfully aided and abetted this discrimination against Williams because of Williams's disability, and Clark cannot articulate a legitimate, nondiscriminatory motive for instigating and perpetuating the disability discrimination Williams suffered.

**<u>ANSWER:</u> Defendants deny the allegations in paragraph 87 of the Complaint.**

88. As a direct and proximate result of Clark's unlawful and discriminatory conduct, Williams suffered losses to the terms, conditions, and privileges of his employment with Lincoln Electric, which included continued employment, promotions, raises in salary, and other related employee benefits.

**<u>ANSWER:</u> Defendants deny the allegations in paragraph 88 of the Complaint.**

89. As a direct and proximate result of Clark's unlawful and discriminatory conduct, Williams suffered serious, genuine, and consequential damages, including pain, suffering, emotional distress, mental distress, and loss of quality and enjoyment of life.

**<u>ANSWER:</u> Defendants deny the allegations in paragraph 89 of the Complaint.**

90. Clark's unlawful and discriminatory conduct was intentional, willful, wanton, malicious, reckless, and in conscious disregard to Williams's rights and feelings, and to the terms, conditions, and privileges of Williams's employment.

**<u>ANSWER:</u>** **Defendants deny the allegations in paragraph 90 of the Complaint.**

## PLAINTIFF'S PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any relief whatsoever from Defendants including, but not limited to, any relief sought in the unnumbered paragraphs following Paragraph 90 of the Complaint.

## GENERAL DENIAL

Defendants deny each and every allegation, express or implied, in Plaintiff's Complaint not specifically admitted to herein.

## AFFIRMATIVE AND OTHER DEFENSES

1. Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2. Plaintiff's claims are barred by the doctrines of waiver, laches, estoppel, consent, acquiescence, release, or unclean hands.

3. The negligence, want of care, and/or legal fault of persons and/or entities for whom Defendants are not and may not be held responsible, including Plaintiff, were intervening and/or superseding causes of Plaintiff's alleged damages thus barring and diminishing any recovery against Defendants.

4. Plaintiff's claims are barred because Defendants did not ratify, condone, or authorize any alleged misconduct, and such misconduct, if any, was outside the course and scope of the employment of the person who committed the misconduct.

5. At all times during Plaintiff's employment, Lincoln Electric maintained a policy prohibiting discrimination and harassment and a procedure for the resolution of complaints alleging discrimination and harassment, which Plaintiff unreasonably failed to utilize.

6. Plaintiff failed to timely and/or properly exhaust administrative remedies or follow statutory, common law or other prerequisites necessary to maintain his claims.

7. Plaintiff's claims are barred to the extent that they are untimely under the applicable statute of limitations.

8. Plaintiff's claims are barred to the extent that they include alleged incidents occurring prior to the applicable statute of limitations for filing an administrative charge of discrimination, and/or alleged incidents not listed in or inconsistent with any administrative charge.

9. Plaintiff's damages, if any, are barred and/or limited by his failure to mitigate his damages.

10. Any damages recovered by Plaintiff must be offset by any compensation he has received or could have received with reasonable diligence for the period for which she is seeking damages.

11. Any damages sought by Plaintiff must be offset and/or reduced by benefits Plaintiff has received from any collateral source pursuant to applicable law, including but not limited to Ohio Rev. Code § 2315.20.

12. Plaintiff's claims are barred, in whole or in part, because Defendants applied their business judgment, acted at all times in good faith, and had legitimate, non-discriminatory and non-retaliatory reasons for the employment actions taken with respect to Plaintiff.

13. Plaintiff's damages are barred, in whole or in part, because Defendants made a good faith effort to comply with applicable law.

14. Plaintiff's claims are barred because Defendants had legitimate, non-discriminatory reasons for its actions toward Plaintiff and would have taken the same action notwithstanding any alleged, unlawful mixed motive for its actions. *See Harris v. Giant Eagle Inc.*, 133 Fed. App'x 288, 297 (6th Cir. 2005) ("When a plaintiff proves a violation using this 'mixed-motive' approach,

an employer has a[n] . . . affirmative defense if it can prove that it would have taken the same action in the absence of the impermissible motivating factor").

15. Plaintiff's claims may be barred and/or limited by the after-acquired evidence doctrine.

16. Plaintiff's claims are barred because Defendants did not proximately cause injury to Plaintiff.

17. To the extent Plaintiff alleges he experienced emotional distress, any such emotional distress experienced by Plaintiff was not severe and/or was not proximately caused by Defendants.

18. Awarding punitive damages to Plaintiff against Defendants under the facts and circumstances of this case would violate the due process clause and/or other provisions of the United States Constitution and/or the Constitution of the State of Ohio.

19. To the extent Plaintiff is seeking punitive damages, such claims would be barred because each and every act of Defendants with regard to Plaintiff was taken in good faith, and the alleged acts or omissions of Defendants do not rise to the level required to sustain an award of punitive damages, do not evidence malicious, reckless, or fraudulent intent to deny Plaintiff his protected rights, are not so wanton or willful as to support an award of punitive damages, and do not otherwise entitle Plaintiff to punitive damages.

20. Plaintiff's damages claim is subject to any and all applicable damages caps under applicable law including, without limitation, Ohio Rev. Code § 2315.18-21.

21. Plaintiff may not recover liquidated damages under the FMLA because Defendants acted reasonably and in good faith, and had reasonable grounds for believing their conduct with respect to Plaintiff complied with the FMLA.

22. Plaintiff seeks recovery under multiple causes of action. Some of Plaintiff's alleged causes of action seek recovery for the same alleged wrong or wrongs as other causes of action. Accordingly, Plaintiff's claims are barred to the extent that Plaintiff seeks multiple recoveries for the same alleged wrong, or wrongs.

23. Defendants presently have insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative or other defenses available. Defendants reserve the right to assert additional defenses in the event that discovery indicates they would be appropriate.

WHEREFORE, Defendants respectfully request that the Complaint be dismissed in its entirety with prejudice, that judgment be entered in Defendants' favor, and that they recover their costs and expenses, including reasonable attorney's fees, and such other and further relief to which it may be entitled at law or in equity or as this Court deems just and appropriate.

Respectfully submitted,

*/s/ Jeffrey J. Moyle*

John Gerak (0075431)
Jeffrery J. Moyle (0084854)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Key Tower
127 Public Square, Suite 4100
Cleveland, OH 44114
216.241.6100
216.357.4733 (FAX)
john.gerak@ogletree.com
jeffrey.moyle@ogletree.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2026, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system. Notice of filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Jeffrey J. Moyle*
One of the Attorneys for Defendants